trepanier4 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00737-CR







Terry Trepanier, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT


NO. 95-489-K26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING







 Terry Trepanier's Ford Bronco collided with and killed a bicyclist on February 3, 1995. 
A jury convicted Trepanier of manslaughter and sentenced him to seven years and six months in prison. 
See Tex. Penal Code Ann. § 19.04 (West 1994). Trepanier challenges the legal and factual sufficiency
of the evidence supporting the conviction, asking us to reverse and render judgment of acquittal or to
remand for a new trial. We will affirm the conviction.




FACTS


 On the day of the accident, Trepanier was waiting at a red light on northbound Highway
183, a six-lane road. Several other drivers waiting at the light testified to the following events. Two
witnesses testified that Trepanier's Bronco was in the far left lane; another stated he was in the middle lane. 
Beginning as the second or third vehicle from the lead, when the light turned green Trepanier rapidly
accelerated and cut between cars in the middle and right lanes until he reached the unimproved right
shoulder of the road. In the far right lane, a large Sysco delivery truck was preparing to turn right into a
private drive just beyond the intersection, but the driver paused and waited for Gregory Fox, who was
bicycling on the shoulder, to clear the driveway. The delivery driver stopped fully when he noticed
Trepanier's Bronco approaching rapidly from the rear. Trepanier passed the Sysco truck on the right,
driving on the shoulder of the road. The delivery driver saw Trepanier strike Fox from the rear.

 The Bronco's impact threw Fox high into the air and killed him instantly. None of the
witnesses noticed Trepanier's brake lights before or after the impact. The police report noted the absence
of "gouge" or "skid" marks, indicating that Trepanier likely did not brake before, during, or immediately
after impact. 

 After he hit Fox, Trepanier continued driving along the shoulder of the road at a reduced
speed. About a quarter mile beyond the point of impact, Trepanier's vehicle got stuck in a drainage ditch. 
The Bronco made a ninety-degree turn, attempting to drive out of the ditch, but only spun its wheels.

 A blood test following the collision showed Trepanier was not under the influence of alcohol
or narcotics. He was charged with manslaughter, and the jury found him guilty. Trepanier appeals on the
grounds that the evidence was legally and factually insufficient to support a manslaughter conviction.

DISCUSSION

Legal Sufficiency

 The critical inquiry on review of the legal sufficiency of the evidence to support a criminal
conviction is whether the record evidence could reasonably support a finding of guilt beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); Griffin v. State, 614 S.W.2d 155, 159
(Tex. Crim. App. 1981). This Court does not ask whether it believes that the evidence at trial established
guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in
the light most favorable to the prosecution, any rational trier of fact could have found the essential elements
of the crime beyond a reasonable doubt. Griffin, 614 S.W.2d at 159.

 A person commits manslaughter if he recklessly causes the death of an individual. Tex.
Penal Code Ann. § 19.04(a) (West 1994). A person acts recklessly with respect to circumstances
surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a
substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of
such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an
ordinary person would exercise under all circumstances as viewed from the actor's standpoint. Tex. Penal
Code Ann. § 6.03(c) (West 1994). "At the heart of reckless conduct is conscious disregard of the risk
created by the actor's conduct." Lewis v. State, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975).

 Jurors may accept or reject any or all of the testimony of any witness. They may look to
all the evidence in the case, whether offered by the State or the defendant, in determining the facts and
issues in the case. Wright v. State, 437 S.W.2d 566, 568 (Tex. Crim. App. 1969). This Court must ask
whether a rational juror could have found that Trepanier "consciously disregarded" the risk of killing a
person when he swerved through lanes of heavy traffic at an inappropriate speed and then pulled onto the
shoulder to pass a large delivery truck that was waiting to turn right from the right lane.

 The court's charge instructed the jurors to find Trepanier guilty if they found that he had
failed to keep a proper lookout, had failed to control speed, had failed to maintain a single lane, or had
voluntarily driven on the shoulder. Trepanier argues the disjunctive language in the charge inappropriately
permitted the jury to find recklessness on the basis of any one element of the indictment. Trepanier
contends that proof of any one of these acts or omissions alone may constitute negligence but cannot, as
a matter of law, constitute recklessness.

 Our answer to this contention is unnecessary to the legal sufficiency challenge because the
record offers evidence supporting every omission alleged in the indictment and included in the charge. 
Numerous witnesses testified that Trepanier moved through two lanes of heavy traffic at an inappropriate
speed and attempted to pass a delivery truck by driving on the shoulder before he struck a bicyclist. The
jury could have found that Trepanier engaged in all of the conduct alleged. 

 In any event, other courts have held that the acts and omissions alleged may individually
constitute recklessness. Driving illegally with obstructed vision on a public road can constitute recklessness. 
Banister v. State, 761 S.W.2d 849 (Tex. App.--Beaumont 1988, no pet.). In Banister, a dump truck
driver in heavy fog on a farm-to-market road reversed his truck to back up a short distance. A woman
driving in the same lane collided with the rear of the truck. "The point is, we think, that Appellant was on
a public road, in heavy fog, and proceeding illegally . . . while Ms. Kratz was legally proceeding." Id. at
850. The failure to maintain a single marked lane may also support a manslaughter conviction. See Lopez
v. State, 731 S.W.2d 682 (Tex. App.--Houston [1st Dist.] 1987), rev'd on other grounds, 779 S.W.2d
411 (Tex. Crim. App. 1989). In Lopez, the defendant struck a pedestrian and a truck parked on the
shoulder. The court concluded that, absent any direct eyewitness testimony, the only reasonable inference
from the evidence was that the defendant's failure to maintain a single marked lane caused the pedestrian's
death. Id. at 684. We hold that, as in the examples above, a reasonable juror could have concluded
beyond a reasonable doubt that Trepanier's engagement in any one of the acts or omissions alleged in the
indictment constituted recklessness.

 Trepanier also contends the evidence was insufficient to prove that he was aware of and
consciously disregarded the risk of death because there was no evidence that he knew or was aware that
a bicyclist was traveling on the shoulder of the highway. A defendant need not be aware of the specific risk
of another's death in order to commit manslaughter. In Rodriguez v. State, 834 S.W.2d 488 (Tex.
App.--Corpus Christi 1992, no pet.), the court of appeals held that the defendant's taking a sharp curve
in the road too fast was sufficient to support a conviction for manslaughter based on recklessness. Id. at
490. The defendant's concession that she had taken the corner too fast indicated that she was aware of the
risk presented and yet disregarded the danger. Id.

 Although Trepanier did not make such a concession, we hold there was sufficient evidence
from which a reasonable juror could have concluded beyond a reasonable doubt that Trepanier voluntarily
created a substantial and unjustifiable risk when he moved onto the shoulder in order to pass the delivery
truck on the right, and that he consciously disregarded the risk of killing a bicyclist traveling legally on that
shoulder when he continued on around the delivery truck. We overrule the first point of error.


Factual Sufficiency

 When the court of appeals conducts a factual sufficiency review, the court views all the
evidence equally, including the testimony of defense witnesses and the existence of alternate hypotheses. 
The court does not view the evidence in the light most favorable to the prosecution as it does in a legal
sufficiency review. The court should set aside the verdict only if it is so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d 126, 136 (Tex. Crim.
App. 1996); Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd, untimely filed).

 At trial, Trepanier did not contest the fact that he struck and killed Gregory Fox. His
defense rested on the theory that he had suffered a seizure and was not in control of the Bronco when it hit
Fox. Dr. Michael Douglas, Trepanier's neurologist, testified regarding Trepanier's history of seizures. 
Trepanier has suffered from "complex partial" seizures, which cause non-responsiveness to one's
environment; a person experiencing a complex partial seizure may continue some habitual motor movements,
but loses awareness of the surrounding environment. However, one would not likely be able to maneuver
a car during such a seizure. Dr. Douglas emphasized that the beginning and ending points of a seizure are
very difficult to determine, although the complex partial seizure usually lasts thirty to forty-five seconds; on
cross-examination he agreed that, if Trepanier had experienced a complex partial seizure while driving, he
could have recovered control of the vehicle once the seizure had ended.

 Trepanier's last reported seizure was in 1983. Since 1985, Dr. Douglas has prescribed
for Trepanier a combination of Phenobarbital and Dilantin, a common treatment for those who suffer from
such seizures. Dr. Douglas testified that the passage of eleven years between seizures is not abnormal for
seizure patients taking medication. Trepanier's blood test following the collision showed levels of medication
beneath the "normal" range, although this norm differs from patient to patient and may be affected by external
factors like diet, health problems, or other medications. Dr. Douglas could not say whether Trepanier
probably did or probably did not have a seizure on the day of the accident.

 Certainly, Trepanier presented evidence showing that he could have suffered a complex
partial seizure while pulling away from the red light. Trepanier may have been able to keep his hands on the
wheel during such a seizure, and he could have regained control once the seizure ended. The time interval
from the light turning green to Trepanier coming to a stop in the ditch, about thirty to forty-five seconds, is
consistent with the typical duration of a seizure. Trepanier told his doctor that he did not remember what
happened during the interval of time, and that he never braked before or after hitting Fox. Trepanier
appeared "glassy-eyed" after climbing out of his Bronco. He told police that he had forgotten to take his
medication that morning, and his Phenobarbital and Dilantin levels were below normal. 

 The State's evidence contradicts the likelihood of a seizure. According to several
witnesses, Trepanier's deft maneuvering would have required control of the vehicle. Moving across heavy
traffic just after the light turned green would have been difficult. Two witnesses thought that Trepanier drove
as though he were merely "in a hurry." Several witnesses expressed their surprise at his ability to negotiate
the obstacles in the roadway and drainage ditch. Trepanier's stunned demeanor could be explained as a
common response following a fatal crash; it is not uncommon for people to behave oddly just after a serious
accident. Trepanier had not reported a seizure in eleven years, and because the normal ranges for
Phenobarbital and Dilantin vary widely, the low levels in the blood test do not necessarily increase the
probability that Trepanier had suffered a seizure. 

 This Court cannot substitute its judgment for that of the jury; we may only remand for a new
trial when the verdict is against the great weight of the evidence presented at trial so as to be clearly wrong
and unjust. See Clewis, 922 S.W.2d at 135. Although some evidence supported the theory of a seizure,
there was evidence to the contrary such that the jury could rationally have rejected the theory and found
Trepanier guilty. We conclude that the evidence supporting the conviction is not factually insufficient and
overrule the second point of error.

 We affirm the trial court's judgment of conviction and sentence.



 Bea Ann Smith, Justice

Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: March 6, 1997

Publish



dence in the light most favorable to the prosecution as it does in a legal
sufficiency review. The court should set aside the verdict only if it is so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d 126, 136 (Tex. Crim.
App. 1996); Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd, untimely filed).

 At trial, Trepanier did not contest the fact that he struck and killed Gregory Fox. His
defense rested on the theory that he had suffered a seizure and was not in control of the Bronco when it hit
Fox. Dr. Michael Douglas, Trepanier's neurologist, testified regarding Trepanier's history of seizures. 
Trepanier has suffered from "complex partial" seizures, which cause non-responsiveness to one's
environment; a person experiencing a complex partial seizure may continue some habitual motor movements,
but loses awareness of the surrounding environment. However, one would not likely be able to maneuver
a car during such a seizure. Dr. Douglas emphasized that the beginning and ending points of a seizure are
very difficult to determine, although the complex partial seizure usually lasts thirty to forty-five seconds; on
cross-examination he agreed that, if Trepanier had experienced a complex partial seizure while driving, he
could have recovered control of the vehicle once the seizure had ended.

 Trepanier's last reported seizure was in 1983. Since 1985, Dr. Douglas has prescribed
for Trepanier a combination of Phenobarbital and Dilantin, a common treatment for those who suffer from
such seizures. Dr. Douglas testified that the passage of eleven years between seizures is not abnormal for
seizure patients taking medication. Trepanier's blood test following the collision showed levels of medication
beneath the "normal" range, although this norm differs from patient to patient and may be affected by external
factors like diet, health problems, or other medications. Dr. Douglas could not say whether Trepanier
probably did or probably did not have a seizure on the day of the accident.

 Certainly, Trepanier presented evidence showing that he could have suffered a complex
partial seizure while pulling away from the red light. Trepanier may have been able to keep his hands on the
wheel during such a seizure, and he could have regained control once the seizure ended. The time interval
from the light turning green to Trepanier coming to a stop in the ditch, about thirty to forty-five seconds, is
consistent with the typical duration of a seizure. Trepanier told his doctor that he did not remember what
happened during the interval of time, and that he never braked before or after hitting Fox. Trepanier
appeared "glassy-eyed" after climbing out of his Bronco. He told police that he had forgotten to take his
medication that morning, and his Phenobarbital and Dilantin levels were below normal. 

 The State's evidence contradicts the likelihood of a seizure. According to several
witnesses, Trepanier's deft maneuvering would have required control of the vehicle. Moving across heavy
traffic just after the light turned green would have been difficult. Two witnesses thought that Trepanier drove
as though he were merely "in a hurry." Several witnesses expressed their surprise at his ability to negotiate
the obstacles in the roadway and drainage ditch. Trepanier's stunned demeanor could be explained as a
common response following a fatal crash; it is not uncommon for people to behave oddly just after a serious
accident. Trepanier had not reported a seizure in eleven years, and because the normal ranges for
Phenobarbital and Dilantin vary widely, the low levels in the blood test do not necessarily increase the
probability that Trepanier had suffered a seizure. 

 This Court cannot substitute its judgment for that of the jury; we may only remand for a new
trial when the verdict is against the great weight of the evidence presented at trial so as to be clearly wrong
and unjust. See Clewis, 922 S.W.2d at 135. Although some evidence supported the theory of a seizure,
there was evidence to the contrary such that the jury could rationally have rejected the theory and found
Trepanier guilty. We conclude that the evidence supporting the conviction is not factually insufficient and